## JAMES D. JARVIS v. THE STATE.

No. 15171.   Delivered October 12, 1932.
Reported in 53 S. W. (2d) 475.

The opinion states the case.

*Wayne Somerville,* of Wichita Falls, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CALHOUN, JUDGE.—Conviction is for swindling by giving a check for the sum of $13.15; punishment assessed being a fine of $25 and one day in the county jail.

The complaint and information in this case charged the appellant with "devising and intending to unlawfully acquire one automobile of the value of $13.15 by the use of false and deceitful pretenses and devices and fraudulent representations and, with intent to defraud, acquire one automobile from J. L. Hatcher and B. J. West with the further intent to deprive the owners thereof and to appropriate same so acquired to the use and benefit of him, the said James D. Jarvis, and that the same was so obtained from said owners by the said James D. Jarvis by means of giving and drawing a certain check drawn on the First National Bank of Wichita Falls, Texas, for said sum of $13.15."

The undisputed evidence shows that the appellant had his car repaired by the said Hatcher and West, and the said check was given in payment for the value of labor done and parts furnished by the injured parties in repairing the automobile. The evidence further showed that at the time the check was signed and delivered by appellant, he did not have any money in the First National Bank; that at various times prior to that time the appellant had had an account in said bank ranging from one hundred dollars to five hundred dollars; the check given by appellant was presented to the bank on April 2 and was not paid because of lack of funds; on April 8, appellant had on deposit the sum of $35 to his credit.

B. J. West, a witness for the state, testified in substance: He and a Mr. Hatcher ran the Wichita Auto Top and Painting Company, and on April 1, appellant gave them the check in question in payment for repairs and parts put upon his automobile. When the bank refused to pay the check, they went out to see the appellant, who was not at home, but they told Mrs. Jarvis to tell the appellant to come down and take up the check, but he failed to do so. About April 8th or 10th Mrs. Jarvis came to their place of business and wanted to give them another check in place of appellant's check, but that the county attorney advised them not to take it. Mrs. Jarvis then suggested that they go to the bank with her and get the cash, but because of the county attorney's advice they did not go. The witness also testified that he took the check to the bank on the 8th of April and his money was not there.

J. L. Hatcher testified to practically the same effect as the witness West. He further testified that he went out to see the

appellant three times, and appellant kept promising to put the money in the bank, but he never did do so; that he filed the first complaint against the appellant on April 8, 1931, which complaint was for the same check the appellant was being tried for under the second complaint.

H. L. McGregor testified as follows: He, as trustee in bankruptcy, was being assisted by appellant in making an audit of the books of a bankrupt firm. When appellant finished his part, he told him that he was going to East Texas and for McGregor to deposit the money due him, fifty or sixty dollars, in the First National Bank. The witness further testified that the referee would not let him pay for the audit until all the work was finished so that one bill could be made out, and as a result the money was not secured until about 30 days afterwards, and it was his understanding that the court sent the check for appellant's money to his wife, and that he (the witness), never did get the check at all and therefore did not have an opportunity to put it in the bank.

L. V. Abernathy, county attorney in Wichita county, testified as follows: Mrs. Jarvis came to his office after her son was arrested and offered to pay the check, and he refused, but stated that, if appellant would pay the check, he would recommend the minimum fine. When Hatcher and West called him about taking the money, he advised them not to do so. When the case was called for hearing on the first complaint, appellant's attorney told him about his side of the case, and the witness told him he would dismiss the case, that it was his understanding that the check would be paid, and, when he learned that the check had not been paid, he filed a second complaint.

Mrs. S. C. Jarvis, mother of appellant, testified as follows: Either Mr. Wise or Mr. Hatcher came to her house on April 8 and her son was sick in bed. When she found out the check had not been paid, she went to them immediately and offered to pay the check, but they refused because the county attorney advised them to do so. She then went to the county attorney and offered to pay it, and she believed he said he would recommend a minimum fine for the swindling if she would pay the check. She had the money in the bank, and when she found out from the bank that McGregor had not deposited the money to her son's account, she offered to pay it from her own money, but they would not let her pay it; that all this occurred on April 8, 1931.

The appellant testified as follows: When he finished his work on the audit about the middle of March, McGregor prom-

ised to deposit the money for him as soon as he got it, and it had been his understanding that he would get his money as soon as he finished his work. When West came to his house on April 2, he told him he was going to see McGregor about getting his money, and he called McGregor who said the work was almost finished and the money would be deposited. He (the appellant) then became ill and was unable to do anything more about it, but on April 8, he deposited thirty or thirty-five dollars in the bank. He further testified that he was willing to pay the check, and did not feel that he was guilty of issuing the check fraudulently; he sent his lawyer to see them, and his lawyer told him they would not take the money for the check and dismiss the case, and he then employed his lawyer to represent him; that he had some money in the bank on April 20, but his attorney's fee took the biggest part of this money.

Appellant's attorney, Wayne Somerville, testified as follows: He was employed in April by appellant, but before his employment he asked the county attorney to accept payment of the check and dismiss the complaint, but the county attorney told him if the check was paid he would recommend the minimum fine in county court. He further testified that it was his understanding on the trial for the first complaint that the case was being dismissed because the complaint was defective in that it alleged an acquired valuable right, towit, possession of an automobile, and he did not understand that it was being dismissed with the understanding that the appellant was to pay the check.

The real issue in the case was whether, at the time appellant gave the check in question, he did so with intent to defraud. That he had such intent is not satisfactorily shown by the evidence. We are not prepared to say, under the evidence, that at the time the appellant gave the check he did not have good reason to believe that the money coming to him from the witness McGregor had been deposited to his credit in the bank. The evidence further shows that, when he ascertained the money had not been deposited to his credit by McGregor, he made a deposit of $35 in the bank to cover said check. Considering the entire record, we do not believe the evidence with sufficient cogency supports the charge that appellant intended to defraud West and Hatcher at the time the check was given.

The judgment is reversed and remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.